IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| A.H. individually and on behalf of H.H., a minor,<br><br>              Plaintiffs,<br><br>v.<br><br>HEALTHKEEPERS, INC. D/B/A ANTHEM BLUE CROSS and BLUE SHILED,<br><br>              Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS<br><br><br>Case No. 2:22-CV-368 TS<br><br>District Judge Ted Stewart<br>Magistrate Judge Cecilia M. Romero |

This matter is before the Court on Defendant Healthkeepers' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).[1] For the reasons discussed herein, the Court will deny in part and grant in part the Motion to Dismiss.

              I.              BACKGROUND[2]

Plaintiff A.H. is an individual suing on behalf of H.H., a minor. During the time at issue, A.H. was a participant in "a fully insured employee welfare benefits plan"[3] ("the Plan") subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). Through A.H., H.H. was a beneficiary of the Plan. Defendant Healthkeepers was the insurer and claims administrator for the Plan.

---

[1] Following briefing, Plaintiffs submitted a Notice of Supplemental Authority. Docket No. 26.

[2] The facts described in this section are based on the allegations contained in the Complaint and are presumed true for purposes of this Motion.

[3] Docket No. 2 ¶ 3.

In 2019, H.H. was discovered to be participating in "cutting," a practice of self-harm. Within the same year, she made her first suicide attempt by overdosing on her prescribed medications. Throughout the following years, H.H. continued to suffer from suicidal ideations and was hospitalized numerous times as a result. She was also enrolled in various treatment programs, each of which failed to adequately address her ongoing mental health issues.

On February 25, 2021, H.H. was admitted to Uinta Academy, a residential treatment facility that "provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems."[4] Shortly thereafter, Defendant issued a letter explaining that it was denying benefits for H.H.'s treatment because Unita Academy was not appropriately accredited as required by the Plan. Specifically, the terms of the Plan require that "residential treatment facilities be accredited by The Joint Commission, the Commission on Accreditation of Rehabilitation Facilities, the National Integrated Accreditation for Healthcare Organization, or Council on Accreditation" to qualify for coverage.[5] H.H. continued to receive treatment at Uinta Academy through February 2022 and incurred expenses therefrom totaling over $250,000.

Plaintiffs have exhausted their administrative remedies seeking coverage for H.H.'s treatment provided by Unita Academy. Plaintiffs now bring one cause of action under 29 U.S.C. § 1132(a)(3) alleging that Defendant's denial of coverage violates the Mental Health Parity and Addiction Equality Act ("the Parity Act") and resulted in a breach of Defendant's fiduciary duty under ERISA.

---

[4] *Id.* ¶ 4.
[5] *Id.* ¶ 46.

## II. STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as the nonmoving party.[6] Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face,"[7] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[8] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[9]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the complaint alone is legally sufficient to state a claim for which relief may be granted."[10] As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[11]

---

[6] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[10] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[11] *Iqbal*, 556 U.S. at 679 (internal citations, quotation marks, and alterations omitted).

On a motion to dismiss, "[i]n addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[12] "Mere legal conclusions and factual allegations that contradict such a properly considered document are not well-pleaded facts that the court must accept as true."[13]

### III. DISCUSSION

#### A. Authenticity of Attached Exhibit

Defendant's Motion to Dismiss is primarily based on the plain language of the Plan, which they attached to their Motion as Exhibit A. As explained above, the Court may consider Exhibit A only if it is referred to in the Complaint, central to Plaintiffs' claim, and indisputably authentic.[14] Plaintiffs do not dispute that the Complaint references the Plan or that the Plan is central to their claims. However, Plaintiffs assert that time to conduct discovery is needed to determine if Exhibit A represents the version of the Plan that was in place between the parties during the relevant time.

"[A] plaintiff cannot defeat consideration of an integral document on a motion to dismiss unless it can offer a factual basis questioning its authenticity."[15] In support of their assertion that

---

[12] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (citing *GFF Corp.*, 130 F.3d at 1384).

[13] *GFF Corp.*, 130 F.3d at 1385.

[14] *Jacobsen,* 287 F.3d at 941.

[15] *Stinson v. Twin Pines Coal Co.*, No. 1:14-CV-334-WKW, 2014 WL 4472605, at *3 (M.D. Ala. Sept. 11, 2014) (quoting *Oshinsky v. N.Y. Football Giants, Inc.,* No. 09cv1186, 2009 WL 4120237, at * 3 (D.N.J. Nov. 17, 2009)); *see also Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, No. 00-4285GEB, 2002 WL 33934282, at *13 (D.N.J. June 26, 2002) (considering the defendant's attached document where "plaintiffs dispute[d] the authenticity of the [document], but they provide[d] no factual basis for that dispute."); *Kalpakchian v. Bank of Am. Corp.*, No. 1:18-CV-03235, 2019 WL 12426033, at *3 (N.D. Ga. Oct. 4, 2019), *aff'd*, 832 F. App'x 579

discovery is necessary to determine Exhibit A's authenticity, Plaintiffs first note that some of the page numbers cited in their Complaint, referencing certain language in the Plan, do not match the page numbers on which the same language is found in Exhibit A. Second, Plaintiffs allege that Exhibit A does not include the same definition for "rehabilitative services" that Plaintiffs provide in their Complaint. The Court finds Plaintiffs' assertions provide adequate basis to question Exhibit A's authenticity. However, because all the relevant Plan provisions are set out in the Complaint, the Court need not rely on Exhibit A to resolve this Motion.

### B. Violation of the Parity Act

The Parity Act is incorporated into ERISA and is enforceable by ERISA participants under 29 U.S.C. § 1132. Under the Parity Act, if a plan offers medical and surgical benefits, and mental health or substance disorder benefits, the plan may not impose more restrictive or separate treatment limitations for mental health or substance disorder treatments than those imposed for medical and surgical treatments.[16] The term "treatment limitation" is defined in the Act as "limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment."[17] The Code of Federal Regulations further provides that "[t]reatment limitations include both quantitative treatment limitations, which are expressed numerically (such as 50 outpatient visits per year), and nonquantitative treatment limitations,

---

(11th Cir. 2020) (finding authenticity of attached document was not challenged where the plaintiff "provided no factual basis for disputing that claim beyond refusing to stipulate to the authenticity of the [e]xhibits attached to [the d]efendants' motion.") (internal quotation marks omitted). *But see Prissert v. EMCORE Corp.*, 894 F. Supp. 2d 1361, 1368–69 (D.N.M. 2012) (finding authenticity was properly disputed where the plaintiffs noted "that the documents [were] not 'clean' copies, but rather contain[ed] handwritten notes, and the fact that one of the documents contain[ed] language suggesting that further negotiations were yet to be undertaken").

[16] 29 U.S.C. § 1185a(a)(3)(A)(ii).

[17] *Id.* § 1185a(a)(3)(B)(iii).

which otherwise limit the scope or duration of benefits for treatment under a plan or coverage,"[18] including "[r]estrictions based on geographic location, facility type, [and] provider specialty."[19] Further all "processes, strategies, evidentiary standards, or other factors used in applying" non-quantitative treatment limitations must meet the requirements of the Parity Act.[20] "In effect, the Parity Act prevents insurance providers from writing or enforcing group health plans in a way that treats mental and medical health claims differently."[21]

Plaintiffs allege that the Plan violates the Parity Act because it requires mental health treatment facilities to meet more stringent licensing requirements to be eligible for coverage than those required for standard medical care coverage. Plaintiffs cite to the provisions in the Plan stating the different licensing requirements, or lack thereof, for mental health treatment facilities and standard medical treatment facilities to support their claim. Defendant, by contrast, cites the language of the Plan, as represented by Exhibit A, in support of its contention that the Plan cannot support a claim for relief because the Plan requires equally stringent licensing requirements for both mental health and standard medical health treatments.

Absent guidance from the Tenth Circuit, courts in the District of Utah have adopted a three-part test that requires a plaintiff asserting a Parity Act violation to:

> (1) identify a specific treatment limitation on mental health benefits, (2) identify medical/surgical care covered by the plan that is analogous to the mental health/substance abuse care for which the plaintiffs seek benefits, and (3) plausibly allege a disparity between the treatment limitation on mental health/substance

---

[18] 29 C.F.R. § 2590.712(a).

[19] *Id.* § 2590.712(c)(4)(ii)(H).

[20] *Id.* § 2590.712(c)(4)(i).

[21] *David S. v. United Healthcare Ins. Co.*, No. 2:18-CV-803, 2019 WL 4393341, at *3 (D. Utah Sept. 13, 2019).

abuse benefits as compared to the limitations that defendants would apply to the covered medical/surgical analog.[22]

"Courts in this jurisdiction favor permitting Parity Act claims to proceed to discovery to obtain evidence regarding a properly pleaded coverage disparity."[23] Accordingly, "a plaintiff need only plead as much of her prima facie case as possible based on the information in her possession" as "[t]he nature of Parity Act claims is that they generally require further discovery to evaluate whether there is a disparity between the availability of treatments for mental health and substance abuse disorders and treatment for medical/surgical conditions."[24]

For purposes of this Motion, Defendant does not dispute that the Plan is subject to the Parity Act, that the Plan provides both medical/surgical benefits and mental health/substance use disorder benefits, or that the analogous medical services identified in the Complaint are in the same classification as a residential treatment center. Therefore, the Parties' dispute is limited to the Complaint's sufficiency in identifying a treatment limitation for mental health or substance use disorder benefits that is more restrictive than a comparable medical/surgical benefit.

In identifying the requisite disparity, a plaintiff may assert that the plan at issue includes a facial limitation violative of the Parity Act, or they may assert that the plan includes a limitation "that is discriminatorily applied between mental health treatment and its . . . medical/surgical

---

[22] *James C. v. Anthem Blue Cross & Blue Shield*, No. 2:19-CV-38, 2021 WL 2532905, at *18 (D. Utah June 21, 2021) (citing *Nancy S. v. Anthem Blue Cross & Blue Shield*, No. 2:19-cv-231, 2020 WL 2736023, at *3 (D. Utah May 26, 2020)).

[23] *Michael W. v. United Behav. Health*, 420 F. Supp. 3d 1207, 1235 (D. Utah 2019).

[24] *Id.* (quoting *Timothy D. v. Aetna Health & Life Ins. Co.*, No. 2:18CV753DAK, 2019 WL 2493449, at *3 (D. Utah June 14, 2019)).

analog."[25] Here, Plaintiffs argue that the Complaint sufficiently pleads both a facial and an as applied disparity.

1. Facial Disparity

To be covered under the Plan, residential treatment centers, like Uinta Academy, must be licensed as required by state law and also be accredited by one of four specified licensing organizations: The Joint Commission (TJC), the Commission on Accreditation of Rehabilitation Facilities (CARF), the National Integrated Accreditation for Healthcare Organizations (NIAHO), or the Council on Accreditation (COA).[26] Plaintiffs assert that analogous medical and surgical facilities are not required to be accredited, among other alleged discrepancies. By contrast, Defendant asserts that the plain terms of the Plan impose equal or more restrictive accreditation requirements for all allegedly analogous medical/surgical benefits.[27]

The Complaint identifies three medical/surgical treatments in the same classification as a residential treatment center for purposes of demonstrating the discrepancy: skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

To receive benefits for services provided by a skilled nursing facility under the Plan, the facility must "be licensed by the appropriate agency and accredited by [(TJC)] or the Bureau of Hospitals of the American Osteopathic Association [(BHAOA)], or otherwise approved by [Defendant]."[28] Plaintiffs allege that coverage for treatment by skilled nursing facility is less restrictive because: (1) a comparison of the two definitions "reveals that . . . skilled nursing care .

---

[25] *Id.*

[26] Docket No. 2 ¶ 46.

[27] Docket No. 18, at 3, 9.

[28] Docket No. 2 ¶ 51.

8

. . has three numbered requirements while residential treatment facilities have six numbered requirements" which "are often more difficult to satisfy;"[29] (2) accreditation is exempted for certain services performed in a residential treatment facility that are "primarily medical in nature;"[30] (3) the definition of skilled nursing facilities provides an exception to the accreditation requirement by allowing such facilities to be accredited as directed "*or otherwise approved by*" Defendant;[31] and (4) the definition of a "facility," which includes a skilled nursing facility, among other services, states that facilities "must be licensed, accredited, registered, *or*, approved by [TJC] or [CARF], as applicable *or* meets specific rules set by [Defendant]."[32]

Defendant argues that the plain language of the Plan demonstrates that both skilled nursing facilities and residential treatment facilities are required to obtain both licensure and accreditation and that Plaintiffs have not shown accreditation by the agencies for nursing facilities is more easily obtained than those for residential treatment facilities. Defendant argues in a footnote that the definition's exception allowing skilled nursing facilities to be "otherwise approved" if not properly accredited is a "mere variation[]" and insufficient to prove a violation of the Act.[33] Defendant further argues that to succeed in stating a claim on this point, Plaintiffs "need to demonstrate that the requirements to be 'otherwise approved' are less demanding than the accreditation requirements imposed on residential treatment centers."[34]

---

[29] *Id.* ¶ 52.

[30] *Id.* ¶¶ 54, 55.

[31] *Id.* ¶ 56.

[32] *Id.* ¶ 57.

[33] Docket No. 18, at 9 n.7.

[34] *Id.*

The Court disagrees with Defendant's analysis. Plaintiffs' allegations suggest that skilled nursing facilities have a built-in alternative to accreditation to allow for coverage that residential treatment facilities do not. On its face, this discrepancy is sufficient to support a plausible violation of the Parity Act. That Plaintiffs have not explained the specifics of how a skilled nursing facility can obtain coverage without accreditation is not detrimental to their claim at this point in the litigation process before discovery has been conducted. At this stage, it is reasonable to infer that obtaining approval from Defendant is less onerous than the accreditation requirements imposed on residential treatment centers.[35] The Plan allows similar alternatives to accreditation for hospice care facilities[36] and rehabilitation facilities.[37] The Court therefore finds Plaintiffs have sufficiently pleaded their Parity Act claim.

2. As Applied Disparity

Plaintiffs argue that they have also supported an "as applied" claim of disparate treatment under the Parity Act. In support of this argument, Plaintiffs point the Court to the asserted facts in the Complaint alleging that Defendant's "facility eligibility criteria . . . deviate[s] from generally accepted standards of medical practice."[38] While the Complaint generally asserts that Defendant applies substandard qualifications for residential treatment while meeting generally

---

[35] *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (the Court must "draw all reasonable inferences from the facts in favor of Plaintiffs").

[36] Under the Plan a hospice care facility must meet the requirements of a "facility." As discussed, Plaintiffs allege that under the Plan a "facility" may be accredited by TJC or CARF "*or* meet specific rules set by [Defendant]." Docket No. 2 ¶ 57.

[37] Defendant asserts the Plan covers inpatient rehabilitation services provided by "a Hospital, a free-standing [rehabilitation] [f]acility, [or] Skilled Nursing Facility," all of which require accreditation. Docket No. 18, at 9. As discussed above, Plaintiffs have alleged the requirements for a skilled nursing facility allow an alternative to accreditation.

[38] Docket No 20, at 9.

accepted standards for analogous medical and surgical care treatment, such allegations are conclusory and not supported by specific facts. Therefore, the Court finds that the Complaint fails to state a claim for an as applied challenge. However, because the Complaint sufficiently states a claim for a facial Parity Act violation, this does not affect the Court's decision to deny the Motion as to Plaintiffs' Parity Act claim.

### C.  Breach of Fiduciary Duty

Defendant also moves to dismiss Plaintiffs' claim for breach of fiduciary duty. The facts in the Complaint related to Plaintiffs' breach of fiduciary duty, in essence, allege that Defendant adopted substandard facility eligibility standards, which allow Defendant "to offer the appearance of covering residential treatment services with a significantly reduced likelihood of ever having to actually pay residential treatment facility claims."[39] Plaintiffs assert such action allows Defendant to obtain "significant financial benefit at the expense of Plan participants . . . whose claims are denied"[40] and that such behavior "constitutes a breach of its fiduciary duty."[41]

ERISA requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries."[42] To succeed on a claim for breach of fiduciary duty under ERISA, a plaintiff must first show that that the defendant was a fiduciary under the plan. "Under ERISA, a party involved in managing a benefit plan takes on fiduciary obligations in one of two ways."[43] First, they may be named as fiduciaries in the instrument establishing the

---

[39] Docket No. 2 ¶ 60.

[40] *Id* ¶ 61.

[41] *Id.* ¶ 62.

[42] 29 U.S.C. § 1104(a)(1).

[43] *Teets v. Great-W. Life & Annuity Ins. Co.*, 921 F.3d 1200, 1206 (10th Cir. 2019).

plan. Second, a person not named as a fiduciary may be a "'functional fiduciary' by virtue of the authority the party holds over the plan."[44] A person acts as a functional fiduciary

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.[45]

"[P]arties are only plan fiduciaries to the extent they are performing one of the functions identified in the definition."[46] At issue here, "[p]lan management or administration confers fiduciary status only to the extent the party exercises *discretionary* authority or control."[47] "On the other hand, non-discretionary or ministerial functions are those that do not require individual decisionmaking. These . . . include those tasks that might otherwise require discretion but which are performed within the confines of plan policies and procedures."[48]

Defendant argues that Plaintiffs fail to support a claim for breach of fiduciary duty because it is well established that "adopting plan requirements—like the accreditation requirement here—is not a fiduciary act under ERISA that gives rise to a fiduciary duty claim."[49] Defendant's articulation of the prevailing law is correct. The Supreme Court has held that "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time,

---

[44] *Id.*

[45] 29 U.S.C. § 1002(21)(A).

[46] *David P. Coldesina, D.D.S. v. Est. of Simper*, 407 F.3d 1126, 1132 (10th Cir. 2005).

[47] *Id.* (emphasis in original).

[48] *Id.* (citation omitted).

[49] Docket No. 25, at 9.

to adopt, modify, or terminate welfare plans. When employers undertake those actions, they do not act as fiduciaries."[50]

Plaintiffs' opposition, however, argues that Defendant has "miss[ed] the mark" in assessing Plaintiffs' argument because Plaintiffs are not arguing that the adoption of the Plan caused the breach.[51] Rather, Plaintiffs allege that the denial of the claim "was a discretionary act that falls directly within [Defendant's] fiduciary duties," that Defendant "exercised its judgment in interpreting the Plan's language and determining what was proper under the circumstances here," and by getting the decision "wrong," Defendant breached its duty.[52]

Plaintiffs' argument fails for two reasons. First, the Complaint does not include any well-pleaded allegations supporting that their breach of fiduciary duty claim is based on Defendant's decision to deny benefits and not the language of the Plan itself. Second, even if such allegations were contained in the Complaint, the plain language of the Plan, as stated in the Complaint, does not provide for any discretion in determining whether to provide coverage to a residential treatment facility that has not acquired the required accreditation. As Plaintiffs allege in their Complaint, the language of the Plan clearly provides that the treating facility must be accredited by one of four specified organizations to be covered by the Plan. As such, any challenge of the decision to deny benefits for lack of accreditation is in effect a challenge to the Plan itself. Because the adoption of a Plan is not a fiduciary function, the Court finds that the Complaint

---

[50] *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (internal quotation marks and citation omitted).

[51] Docket No. 20, at 16.

[52] *Id*.

fails to support a plausible claim for breach of fiduciary duty and grants the Defendant's Motion as to this claim.

It is therefore

ORDERED that Defendant's Motion to Dismiss (Docket No. 18) is GRANTED in part and DENIED in part, as described in this Order.

DATED this 26th day of September, 2023.

BY THE COURT:

_____
Ted Stewart
United States District Judge