Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
Andrew J. Somers, #19078
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com
andrew@briansking.com

Attorneys for Plaintiff

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| A.H., individually and on behalf of H.H. a minor,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>HEALTHKEEPERS, INC. D/B/A ANTHEM BLUE CROSS and BLUE SHIELD,<br><br>　　　　　Defendant. | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:22-CV-00368-TS-CMR<br><br>Judge Ted Stewart<br><br>Magistrate Judge Cecilia M. Romero |

Plaintiff A.H., individually and on behalf of H.H., a minor, through her undersigned counsel, submits this reply memorandum in support of her Motion for Summary Judgment against Defendant Healthkeepers, Inc. d/b/a Anthem Blue Cross and Blue Shield ("Anthem"). Defendant erred when it denied benefits for H.H.'s medically necessary care at Uinta Academy ("Uinta") and violated the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA" or the "Parity Act") when it denied coverage for lack of accreditation not required to the same degree for analogous medical/surgical facilities.

1

Anthem's opposition clarifies that without relying on Plan language that violates the Parity Act, H.H.'s care would have been covered under the Plan. Even when a survey that could have met Anthem's undisclosed credentialing requirement might have existed, Anthem never informed A.H. that there was any exception to accreditation before litigation or that she had other means of seeking coverage. When prompted to explain the perceived disparity in the Plan's credentialing requirements to A.H. in its pre-litigation denial letter, Anthem did the opposite – it violated its fiduciary duties and disguised the only path to coverage that could have applied to H.H.'s treatment at Uinta behind a lie that accreditation was universally required without exception. This comedy of arbitrary errors and capricious mistruths establishes Anthem's failure to comply with its fiduciary duties and enforce the Plan in a manner consistent with the Parity Act. Plaintiff should be entitled to summary judgment.

Plaintiff has filed the record provided to her with the Court and it is being maintained under seal in its entirety. The Record has been Bates stamped as ANTHEM 000001 through ANTHEM 000914. For the convenience of the Court, Plaintiff will refer to these documents as Rec. 1 through Rec. 914.

## REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

A.H. notes that Defendant's responses to facts 6, 8-14, and 18-25 are deficient as they take no issue with the veracity of the facts as articulated by A.H. and incorrectly assume that those facts are immaterial to her motion. As articulated by the Tenth Circuit in *M.S. v. Premera Blue Cross*, the threshold standing question in Parity Act claims is whether the Plan would have otherwise covered treatment denied by the insurer absent the purported Parity Act violation.[1]

---

[1] *See* 2024 U.S. App. LEXIS 24816, *19-21 (10th Cir. Oct. 1, 2024).

Because the arguments and statements made in A.H.'s appeal letters seeking coverage of H.H.'s treatment at Uinta are relevant to her claims for coverage under the Plan, they are material facts helping to establish the fact that A.H. has standing.[2] Defendant admits that all of these facts are "undisputed," and the Court should consider it undisputed that based on these facts, A.H. has standing to pursue her Parity Act claim.[3]

Defendant's response to Plaintiff's fact 2 only disputes whether Anthem was the fiduciary for the Plan during the treatment at issue in this case, admitting that Anthem was the insurer and claims administrator and is an independent licensee of the nationwide Blue Cross and Blue Shield Association.[4] But Anthem was indisputably the fiduciary for the Plan during the treatment at issue in this case. Anthem asserts in its Opposition that the Plan grants it discretionary authority.[5] The ERISA regulations issued by the Department of Labor make it clear that any individual or entity who "exercises authority or control respecting management or disposition of the plan's assets" and anyone who "has any discretionary authority or discretionary responsibility in the administration of the plan" acts as a fiduciary.[6] As such, it should be undisputed that Anthem was the ERISA fiduciary for the Plan during the treatment at issue in this case. However, Plaintiff acknowledges that whether Anthem acted in its fiduciary role at various times relevant to this case is a disputed question of law.

---

[2] *See, e.g., Scott v. Allen*, 2024 U.S. Dist. LEXIS 142376, *9 (D. Colo. 2024) ("the undisputed material facts in the record inform [the court's] determination with respect to standing. At the summary judgment stage, a plaintiff's standing must be supported by specific evidentiary facts and not by mere allegations") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).
[3] See generally ECF Doc. No. 55, 2-11 of 20.
[4] See ECF Doc. No. 55, at 3 of 20.
[5] *Id*, at 12 of 20; Rec. 170.
[6] *See e.g., Pegram v. Herdrich*, 530 U.S. 211, 236 (2000) (quoting 29 C.F.R. §2509.75-5, Question D1, and 29 C.F.R. §2509.75-8, Question D3) (quotation marks omitted); see also 29 U.S.C. §1002(21)(A)(i-iii).

Defendant's response to Plaintiff's fact 7 is correct, and Plaintiff mistakenly omitted a record citation supporting this fact. The citation that should have been attached to this fact would have directed Defendant and the Court to page 202 of the Record.

Defendant's responses to facts 21 through 24 are also insufficient as they do not dispute the veracity of the statements therein.[7] Additionally, while these facts as articulated may or may not be evidence of the fact a Parity Act violation existed, these facts are material and undisputed insofar as they indicate that A.H. sought information from Anthem before litigation regarding the applicable accreditation requirements and that Anthem violated its fiduciary duties by not disclosing its credentialing policy or informing A.H. of any exception to accreditation she could pursue until litigation.[8]

Noting that Anthem incorporates by reference the statement of material facts it included in its Motion for Summary Judgment in its Opposition to A.H.'s motion, A.H. respectfully incorporates her responses to those facts as articulated in her Opposition as though they were fully set forth herein.[9]

//

//

//

---

[7] See ECF Doc. No. 55, at 8-10 of 20.

[8] *Id*; see also ECF Doc. No. 48, at ¶27 (undisputed by Defendant, indicating that Anthem responded to A.H.'s appeal letter stating that "[a]ll facilities, medical and behavioral health, under your… [employer] benefit plan are required to be accredited" without exception – rather than giving A.H. notice of any credentialing policy or exception allowing for coverage if she could submit a site survey from the last 36 months); see also ECF Doc. No. 48, at 14 of 15 (indicating Anthem acts improperly if it disguises a path to coverage behind facially discriminatory plan language and never informs A.H. of her rights under the Plan); also ECF Doc. No. 54, at 11-13 (same).

[9] See generally ECF Doc. No. 54, at 2-5 of 17.

4

# ARGUMENT

## I. THE STANDARD OF REVIEW IS DE NOVO.

Setting aside compliance with the Parity Act, Anthem argues that it has discretion to interpret the plan that requires this Court to review its discretionary actions under the arbitrary and capricious standard.[10] Plaintiff does not dispute the fact that Anthem has discretionary authority to interpret the terms of the Plan.[11] But Plaintiff finds it risible that Anthem could argue it has discretion to interpret the Plan but in the very same breath deny that it engaged in *any* fiduciary action rendering it liable for violating the Parity Act.[12] As is undisputed by the parties, review of Anthem's compliance with MHPAEA demands a *de novo* standard of review, and there is no reason *de novo* review should cease when Anthem is granted discretion to construe contract language and may have used that discretion to violate the Parity Act.[13]

There are two plausible scenarios here. On one hand, Anthem may have utilized its discretionary authority to interpret the Plan before litigation, issuing a denial letter indicating there was no exception to the accreditation requirement in response to A.H.'s appeal and creating an as-applied violation of the Parity Act. On the other hand, Anthem may not have utilized its discretionary authority at all, enforcing the terms of the Plan as written, and the Plan facially

---

[10] See ECF Doc. No. 55, at 12 of 20.
[11] See Rec. 169-70 (the Plan reserving discretionary authority).
[12] See ECF Doc. No. 47, at 24 of 25 (arguing that "Anthem's determination to deny benefits was… not one in which Anthem engaged in discretionary decision-making").
[13] See ECF Doc. No. 55, at 13 of 20 (admitting that this Court's interpretation of the Parity Act is *de novo*); *see also Christine S. v. Blue Cross Blue Shield of N.M.*, 2021 U.S. Dist. LEXIS 199330, at *10 (D. Utah 2021); *See also Beckstead v. EG&G Tech. Servs. Emple. Benefit Plan*, 2006 U.S. Dist. LEXIS 86158, at *8 (D. Utah 2006) (citing *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996) for the proposition that "the determination of a Plan Administrator's compliance with ERISA's statutes and regulations is one of statutory interpretation in which the Court owes the Plan Administrator no deference."); *also Long v. Flying Tiger Line, Inc.*, 994 F.2d 692, 694 (9th Cir. 1993).

5

violates the Parity Act. In neither scenario should this Court's determination turn on an arbitrary-and-capricious review of Anthem's interpretation of the Plan.

In the first scenario, Anthem acted as a fiduciary and failed to fulfill its duties by misleading A.H. as to the requirements of the Plan and failing to communicate the exception to accreditation created by its credentialing policy. This kind of failure to communicate material information to A.H. and engage in meaningful dialogue has consistently been held to be arbitrary and capricious.[14] Additionally, in this scenario Anthem would have exercised its discretion to interpret the Plan in one direction in its denial letter, asserting without exception that the only way to meet the Plan's accrediting requirements for a residential treatment center was to "have accreditation by The Joint Commission, the Commission on Accreditation of Rehabilitation Facilities, the National Integrated Accreditation for Healthcare Organizations, or the Council on Accreditation."[15] This Court should not allow Anthem to move in another direction in litigation and Anthem should be limited to the interpretation it provided to A.H. and that she relied on to her detriment during the pre-litigation appeal process.

---

[14] *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (stating that ERISA imposes a "special standard of care" on administrators to provide a "full and fair review" of claims); *see also D.K. v. United Behavioral Health*, 67 F.4th 1224, 1239-43 (10th Cir. 2023) (stating that full and fair review requires ERISA administrators to engage in a meaningful dialogue with participants and beneficiaries, addressing and responding to arguments and claims made by participants on appeal); *also David P. v. United Healthcare Ins. Co.*, 77 F.4th 1293, 1309-12 (10th Cir. 2023) (same); *Ian C. v. UnitedHealthCare Ins. Co.*, 87 F.4th 1207, 1223 (10th Cir. 2023) (same); *see also Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997) (placing a burden on plan administrators to ask for information they lack that might reasonably allow a claimant to obtain coverage); *Maez v. Mountain States Tel. & Tel.*, 54 F.3d 1488, 1500 (10th Cir. 1995) (recognizing that ERISA fiduciaries cannot make material misrepresentations, and that ERISA imposes a duty on plan fiduciaries not to affirmatively mislead plan participants) (collecting cases).
[15] See Rec. 483.

In the second scenario, where this Court assumes *arguendo* Anthem did not use its discretionary authority at all, Anthem has "'forfeited the privilege to apply [its] discretion.'"[16] In order to preserve discretionary authority, Anthem had to actually exercise that authority during the pre-litigation appeal process.[17] It cannot now argue that it should be free to interpret the terms of the Plan as it sees fit. In such a situation, *de novo* review of the terms of the Plan is the most appropriate course, and the Court should not defer to Anthem's interpretation.[18] The interpretation of whether Anthem complied with MHPAEA is indisputably a "legal question," and *de novo* review of the terms of the Plan as well as Anthem's compliance with the Parity Act is appropriate.[19]

## II. ANTHEM VIOLATES THE PARITY ACT.

The parties do not dispute the proper elements of a Parity Act claim, but Anthem does take issue with Plaintiff's arguments. Anthem asks this Court to look past its refusal to disclose the credentialing policy and alternative path to coverage in the absence of accreditation in its argument that any facility under the plan may be "otherwise approved by" it, not just the

---

[16] *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 972 (2006) (quoting *Gritzer v. CBS, Inc.*, 275 F.3d 291, 296 (3d Cir. 2002)); *see also Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 632 (10th Cir. 2003) ("[d]eference to the administrator's expertise is inapplicable where the administrator has failed to apply his expertise to a particular decision").

[17] *See Abatie*, 458 F.3d at 971 ("*Firestone* directs, consistent with trust law principles, that 'a deferential standard of review [is] appropriate when a trustee *exercises* discretionary powers.'") (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)) (emphasis and brackets in original).

[18] *Id*.

[19] *Christine S. v. Blue Cross Blue Shield of N.M.*, 2021 U.S. Dist. LEXIS 199330, at *10 (D. Utah 2021); *See also Beckstead v. EG&G Tech. Servs. Emple. Benefit Plan*, 2006 U.S. Dist. LEXIS 86158, at *8 (D. Utah 2006) (citing *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996) for the proposition that "the determination of a Plan Administrator's compliance with ERISA's statutes and regulations is one of statutory interpretation in which the Court owes the Plan Administrator no deference."); *also Long v. Flying Tiger Line, Inc.*, 994 F.2d 692, 694 (9th Cir. 1993).

7

medical/surgical analogues to residential treatment centers.[20] Anthem also asks this Court to thrust upon A.H. the burden of proving something in litigation that Anthem should have asked for during the pre-litigation appeal process and that she had no way of knowing until after she brought suit.[21] Neither request should carry any water. Anthem made it impossible for A.H. to know her rights.[22]

### A. The Plan Facially Violates the Parity Act.

Anthem's first argument that A.H.'s interpretation of the Plan is "unreasonable" ignores the inherent conflict between Anthem's preferred interpretation and the actual text of the Plan.[23] Anthem quotes the Plan definitions for residential treatment centers and facilities, then argues without any support that the "Residential Treatment Center / Facility"[24] definition incorporates the more broad "Facility" definition, and claims that any "Facility" (including a residential treatment center) can qualify for coverage by meeting "specific rules" set by Anthem.[25] This makes no sense.

As discussed in A.H.'s Opposition to Anthem's Motion for Summary Judgment, Anthem itself has admitted that the "specific rules" the Plan discusses here are the more specific definitions for respective types of Facilities, not the external requirements of Anthem's

---

[20] See generally ECF Doc. No. 55, at 14-15.
[21] *See generally id*, at 16-18.
[22] *See generally Lyn M. v. Premera Blue Cross*, 966 F.3d 1061, 1065-68 (10th Cir. 2020).
[23] *Id*, at 14 of 20.
[24] Plaintiff notes that Defendant's brief bolds the phrase "Facility" where no bold existed in the original document at Rec. 771. It would be more proper to read this Plan term as defining a "Residential Treatment Center" as well as a "Residential Treatment Facility," rather than reading this title as an explicit incorporation of the "Facility" definition in the more specific plan term applicable to residential treatment centers. Defendant's denial letters support this reading, as they indicate that "residential treatment *facilities* [must] be accredited
[25] *See id*, at 14-15 of 20.

credentialing policy.[26] The Plan here endorses the same approach when it indicates that any "specific limitation or exclusion will override more general benefit language."[27] When the general limitations in the definition of a "Facility" that are enforced only "as applicable" under the other language of the Plan come into conflict with the more specific language in the Residential Treatment Center definition, the Residential Treatment Center definition prevails. Anthem itself acknowledges that "Facilities must satisfy the Plan's quality assurance and credentialing requirements, either by obtaining accreditation from one of the third-party agencies listed in the Plan or as otherwise provided by Anthem's Credentialing policy *as permitted by the Plan's terms*."[28]

Moreover, Anthem's argument that the Facility definition is incorporated into the Residential Treatment Center definition makes even less sense. Such a reading would require the Residential Treatment Center definition to include hospitals, ambulatory surgical facilities, skilled nursing facilities, and home health care agencies, to name a few.[29] This circuitous and superfluous repetition would render the Residential Treatment Center definition a nullity. Anthem cannot pick and choose which portions of the Facility definition to incorporate in whatever manner it finds convenient. For it to do so would also require exercising discretion it did not utilize during the pre-litigation appeal process in this instance – discretion to interpret the Plan that it has now waived.[30]

The Plan's terms do not permit Anthem to apply its Credentialing policy to Residential Treatment Centers in any way. Instead, the Plan's terms require residential treatment centers to

---

[26] See generally ECF Doc. No. 54, at 8-9 of 17.
[27] Rec. 170.
[28] See ECF Doc. No. 55, at 16 of 20 (emphasis added).
[29] See Rec. 766.
[30] See generally *supra*, Argument §I.

be accredited by one of several specifically enumerated accrediting bodies, full stop.[31] Anthem said as much in its denial letters.[32] This Court can take Anthem at its word and find the terms of the Plan facially violate the Parity Act. By providing an alternative route to coverage for medical/surgical treatment that can be implicitly satisfied by licensure (via the accompanying state-mandated inspections) that is unavailable for mental health or substance use disorder treatment in a Residential Treatment Center, Anthem facially violated the Parity Act.

### B. Anthem Commits an As-Applied Violation of the Parity Act.

In its Opposition, Anthem asserts that A.H. improperly attempts to flip the burden of proof.[33] Anthem argues that because the Utah law mentioned in A.H.'s Motion did not come into effect until after H.H.'s admission to Uinta, it had no duty to inform A.H. of the accreditation exception or ask her for a site survey.[34] In addition, faulting A.H. for her lack of knowledge of information that Anthem hid from her until litigation, Anthem argues that A.H. had to produce information not in her possession regarding the site surveys of Uinta conducted by the Utah Department of Health and Human Services.[35] Anthem's arguments are unconvincing.

As a threshold matter, Anthem is in part correct that Utah Code Ann. §26B-2-104 did not require mandatory quarterly inspections of residential treatment facilities until May 5, 2021.[36] But this does not impact the thrust of A.H.'s argument. Even under the prior version of the law, the Utah Department of Health and Human Services was still able to enter and inspect residential

---

[31] See Rec. 771.
[32] See Rec. 190; also Rec. 17.
[33] See ECF Doc. No. 55, at 16 of 20.
[34] *Id*, at 17 of 20.
[35] *Id*, at 18 of 20.
[36] See generally ECF Doc. No. 55, at 18 (indicating the bill adding the mandatory inspections became effective on May 5, 2021).

treatment centers such as Uinta.[37] Regardless of which law was in effect, Anthem was on notice that some kind of inspection could have occurred before it issued its initial denial. And while the law was not in effect at the time of H.H.'s admission, it *was* in effect when Anthem considered A.H.'s appeal and when Anthem issued its final denial.[38] A.H. submitted evidence of Uinta's licensure in her appeal at a time when a condition of licensure was being subject to mandatory quarterly inspection.[39] In considering the appeal, Anthem should have noted the law then in force and considered that the evidence A.H. submitted implicitly established she could meet Anthem's undisclosed exception to the accreditation requirement.

Being on notice that Uinta was licensed, the proper action for a fiduciary such as Anthem would have been to inform A.H. that she could search for and provide the results of such an inspection in order to qualify for coverage.[40] Instead, Anthem refused to inform A.H. that she could qualify for coverage in this way. "Lacking necessary – and easily obtainable – information" about whether Uinta had been subject to one of the site surveys that could have qualified it for coverage under the Plan, Anthem did not ask for it and "made its decision blindfolded."[41] Anthem "cannot rely on a lack of information to support its denial of benefits when it fails to inform the beneficiary about the missing information so that the beneficiary can provide it."[42] That is precisely what Anthem does here.

---

[37] *See id*, at 17 of 20 (acknowledging that the law in effect in 2020 stated the Utah Department of Health and Human Services "may… enter and inspect… the facility of a licensee").
[38] See Rec. 201-08 (A.H.'s first appeal, submitted May 24, 2021 and including evidence of Uinta's licensure); see also Rec. 17-18 (Anthem's final denial, issued June 7, 2021).
[39] See Rec. 472 (showing Uinta's license was applicable through at least May 31, 2021, twenty-six days after S.B. 127 came into effect).
[40] See 29 U.S.C. §1104(a)(1)(A) (requiring Anthem to discharge its duties with respect to the Plan "solely in the interest of the participants and beneficiaries" and for the exclusive purpose of providing benefits).
[41] *See Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997).
[42] *Id*, at 1464 (citing *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 691 (7th Cir. 1992)).

Anthem now incorrectly argues that A.H. was under the duty to produce any such site survey in discovery. But whether Uinta had a site survey completed "within the 36 months prior to H.H.'s [] admission" is indisputably something "beyond the scope of [A.H.'s] personal knowledge."[43] If Anthem wanted to know whether Uinta had a site survey done in that time frame, it should have subpoenaed Uinta. A.H. is a participant and beneficiary of this Anthem Plan. She does not represent Uinta, nor does she have knowledge of Uinta's inner workings, Uinta's site survey history, or anything else responsive to Anthem's discovery requests.[44] To charge claimants with both (1) particularized knowledge of undisclosed credentialing policies that are not part of the Plan and that conflict with the Plan's terms on their face and (2) the knowledge and acumen necessary to obtain site surveys from Uinta that she never knew Anthem required her to submit for coverage is risible. This flies in the face of ERISA's purpose and would rubber-stamp fiduciary abuses of discretion by Anthem.[45]

A.H. ought to have an opportunity to submit such a site survey on remand of her claims. Anthem should not be free to fault A.H. for a failure to provide a site survey of Uinta before litigation when it never disclosed such a site survey was necessary during the pre-litigation

---

[43] *See* Exhibit A, *Plaintiff's Discovery Responses*, at 8 of 17.
[44] *See id*, at 11 of 17 ("I am not aware of what third-party site surveys are, and therefore didn't inquire about them before H.H.'s admission").
[45] *See, e.g., Huss v. IBM Med. & Dental Plan*, 418 Fed. Appx. 498, 508 (7th Cir. 2011) (noting that ERISA and its disclosure provisions exist, in part, to ensure that "participants and beneficiaries know where they stand with respect to the plan, including knowing the procedures they must follow to secure benefits") (citing *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 793 (7th Cir. 2009)); *see also Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1073 (9th Cir. 2005) (citing *Hamilton v. Air Jamaica, Ltd.*, 945 F.2d 74, 78 (3rd Cir. 1991)) (same); *also M.S. v. Premera Blue Cross*, 553 F. Supp. 3d 1000, 1039 (D. Utah 2021) (citing *Moothart v. Bell*, 21 F.3d 1499, 1503 (10th Cir. 1994)) (same).

appeal process and even affirmatively indicated to A.H. that no alternative to accreditation was available in its denial letters.[46]

### C. Plaintiff has Standing to Seek Equitable Relief.

Anthem incorrectly argues that A.H. seeks "benefits under the Plan" as part of her request for equitable relief.[47] This is not the case – A.H. seeks "equitable remedies as appropriate to remedy [Anthem's] violations" of the Parity Act.[48] A.H. acknowledges that the Tenth Circuit generally indicates that equitable relief is only available in the absence of adequate remedies at law.[49] That is precisely the case here.

In *Varity Corp. v. Howe*, the Supreme Court found it appropriate to provide equitable relief to ERISA participants and beneficiaries in the form of an order reinstating a benefits plan and an order that its terms be enforced.[50] In doing so, the Supreme Court noted that "it is hard to imagine why Congress would want to immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy," describing 29 U.S.C. 1132(a)(3) as a "catchall" that provided "appropriate equitable relief for any statutory violation."[51] No party disputes that this includes MHPAEA.[52] The Supreme Court also noted that this structure suggests that the ERISA catchall provisions, including 29 U.S.C. §1132(a)(3), act as a safety net to offer "appropriate equitable relief for injuries cause by violations that Section [1132] does not elsewhere adequately remedy."[53] As the District of Utah has properly noted, "'where Congress

---

[46] See generally Rec. 17-18; see also generally Rec. 190-191.
[47] ECF Doc. No. 55, at 19 of 20.
[48] See ECF Doc. No. 48, at 2 of 15.
[49] *See Switzer v. Coan*, 261 F.3d 985, 991 (10th Cir. 2001).
[50] 516 U.S. 489, 495 (1996).
[51] *Id*, at 512-513 (internal quotation marks and citation omitted).
[52] See generally 29 U.S.C. §1185a.
[53] *Id*, at 512.

13

elsewhere provided *adequate relief* for a beneficiary's injury, there will *likely* be no need for further equitable relief, in which case such relief *normally* would not be appropriate.'"[54]

In this case, this is dispositive. A simple action to enforce the terms of the Plan under 29 U.S.C. §1132(a)(1)(B) would result in Anthem applying Plan terms that violate the Parity Act. Anthem would simply deny coverage of H.H.'s residential treatment at Uinta once again because Uinta is not accredited by its preferred organizations as required by the Plan.[55] As the Supreme Court has noted in another case, 29 U.S.C. §1132(a)(1)(B) "speaks of '*enforc[ing]*' the 'terms of the plan,' not of *changing* them."[56] Accordingly, an ERISA claim for benefits would not provide adequate relief. For Plaintiff to seek any legal remedy under a claim for benefits would be futile because the terms of the Plan as written could not be enforced in a manner that provides an adequate remedy for Anthem's violation of the Parity Act. It would not remedy the disparity in the Plan allowing analogous forms of medical or surgical treatment to be otherwise approved by Anthem in the absence of accreditation while residential treatment centers providing mental health or substance use disorder treatment are required to be accredited without exception.

While there is a "general *remedy* preference" for awarding monetary relief under 29 U.S.C. §1132(a)(1)(B) rather than equitable relief under 29 U.S.C. §1132(a)(3), that does not necessarily render monetary relief by any name inappropriate in this case.[57] The Supreme Court has articulated that the types of relief available under 29 U.S.C. §1132(a)(3) include those "traditionally considered equitable remedies," including reformation of contract, injunctions,

---

[54] *Christine S. v. Blue Cross Blue Shield of N.M.*, 428 F. Supp. 3d 1209, 1221 (2019) (quoting *Varity*, 516 U.S. at 515) (emphasis in original).
[55] See Rec. 771.
[56] *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011) (quoting 29 U.S.C. §1132(a)(1)(B)) (emphasis and alterations in original).
[57] *Christine S.*, 428 F. Supp. 3d at 1222.

estoppel, mandamus, restitution, and surcharge remedies in the form of monetary awards against trustees or fiduciaries providing plaintiffs a "make-whole" remedy without "remov[ing] it from the category of traditionally available equitable relief."[58] As noted in A.H.'s Motion for Summary Judgment, she requests the opportunity to conduct further briefing on the appropriate remedy in this instance.[59]

A.H. admits that she may not seek pre- and post-judgment interest pursuant to U.C.A. §15-1-1 at this time because this is not a legal claim for breach of contract. But Anthem's attempt to take issue with A.H. requesting her attorneys' fees is wholly unsupported.[60] 29 U.S.C. §1132(g) provides that "in *any action* under this subchapter" the Court may, in its discretion, allow reasonable attorneys' fees and costs to either party. Nothing supports a reading of this provision that inexplicably excludes actions under 29 U.S.C. §1132(a)(3).

## CONCLUSION

For the foregoing reasons, A.H. requests that the Court grant her Motion for Summary Judgment.

DATED this 6th day of December, 2024.

By     s/ Brian S. King
        Brian S. King
        Andrew J. Somers
        Attorneys for Plaintiff

---

[58] *See Amara*, 563 U.S. at 439-42. A.H. notes that the *Amara* Court defined surcharge as "monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Id* at 441; *see also O'Dowd v. Anthem Health Plans, Inc.*, 2015 U.S. Dist. LEXIS 132923, *13 (ruling that a request for surcharge "is essentially an unjust enrichment claim"). Particularly where the Plan is fully-insured by Anthem, and Anthem stood to gain by violating its fiduciary duties and MHPAEA, such a remedy is appropriate.
[59] See ECF Doc. No. 48, at 14 of 15.
[60] See generally ECF Doc. No. 55, at 19 of 20.

15

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing Plaintiff's Motion for Summary Judgment has been served via the Court's CM/ECF system to all registered participants in this matter.

      DATED this 6th day of December, 2024.

                                                          /s/ Brian S. King